# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 13-261

STATE OF LOUISIANA

VERSUS

BEN JAMES THOMPSON

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 46373
HONORABLE DURWOOD W. CONQUE, DISTRICT JUDGE

**********

**J. DAVID PAINTER
JUDGE**

**********

Court composed of Billy Howard Ezell, J. David Painter, and James T. Genovese, Judges.

**AFFIRMED.**

André R. Bélanger
Yigal Bander
Manasseh, Gill, Knipe & Bélanger, PLC
8075 Jefferson Highway
Baton Rouge, LA 70809
(225) 383-9703
COUNSEL FOR DEFENDANT-APPELLANT:
    Ben James Thompson

Ted L. Ayo, Assistant District Attorney
Fifteenth Judicial District
100 North State Street, Suite 215
Abbeville, LA 70510
(337) 898-4320
COUNSEL FOR THE STATE OF LOUISIANA

**PAINTER, Judge.**

Defendant, Ben James Thompson, appeals the trial court's finding that he knowingly and intelligently waived his right to trial by jury. We affirm.

## FACTS AND PROCEDURAL HISTORY

When we previously considered this case in *State v. Thompson*, 12-83, pp. 1-2 (La.App. 3 Cir. 10/10/12), 100 So.3d 375, 376, we set forth the facts and procedural history as follows:

> The State charged Defendant with armed robbery with the use of a firearm. Defendant allegedly entered the Food-N-Fun in Kaplan, Louisiana[,] while armed with a gun[,] and demanded money from the cashier. Defendant stipulated that he entered and robbed the cashier at the convenience store, but he denied he was armed with a weapon. He also contested that he used force or intimidation while committing the offense.

This court also noted that:

> Defendant Ben James Thompson was convicted of armed robbery with the use of a firearm, a violation of La.R.S. 14:64 and 14:64.3, after a bench trial.
>
> The trial court sentenced Defendant to twenty-five years at hard labor without benefit of probation, parole, or suspension of sentence. The trial court also sentenced him to an additional five years for using a firearm, which the court ordered to run consecutively to his sentence for armed robbery.

*Id*. at 375-76.

This court conditionally affirmed Defendant's conviction and sentences but remanded the case to the trial court for an evidentiary hearing on the issue of whether Defendant validly waived his right to trial by jury. The hearing ordered by this court was held on November 15, 2012. At the conclusion of that hearing, the trial court found that Defendant knowingly and intelligently waived his right to trial by jury. Defendant appealed that ruling and is now before this court alleging that the trial court erred in finding that the State proved that he validly waived his

right to trial by jury. We find that this assignment of error lacks merit and affirm both the trial court's ruling and Defendant's conviction.

## DISCUSSION

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. An error patent review was previously conducted by this court in *Thompson*, 100 So.3d 375, and we will not repeat that review in this opinion.

*Waiver of Trial by Jury*

In his only assignment of error, Defendant contends that the trial court committed legal error and manifest factual error in finding that the State proved that he validly waived his right to trial by jury.

In *State v. Bazile*, 12-2243, pp. 17-19 (La. 5/7/13), __ So.3d __ (footnote omitted), the supreme court discussed the waiver of the right to trial by jury as follows:

> To be valid, a defendant's waiver of his right to a jury trial must be knowing and intelligent. *Adams* [*v. United States ex rel. McCann*], 317 U.S. [269] at 277–278, 63 S.Ct. at 236 [(1942)]. "[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *Id.*, 317 U.S. at 278, 63 S.Ct. at 241. The state constitution and Louisiana criminal procedure also require a criminal defendant's waiver of his right to trial by jury to be both knowing and intelligent. *See* La. Const. art. I, § 17(a) and La.C.Cr.P. art. 780(A). . . .
>
> . . . In this context, a criminal defendant's jury waiver is deemed knowing and intelligent when he understands "that the choice confronting him is, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge." *United States ex rel. Williams v. DeRobertis*, 715 F.2d 1174, 1180 (7th Cir.1983), *cert. denied*, 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984); *see also United States v. Sammons*, 918 F.2d 592, 597 (6th Cir.1990); *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir.2004*), cert. denied*, 544 U.S. 925, 125 S.Ct. 1645, 161 L.Ed.2d 485 (2005). That is all the defendant needs to know and understand. "Greater proof of knowing

and intelligent waiver has been neither constitutionally nor jurisprudentially required." *State v. Johnson*, 389 So.2d 1302, 1305. Thus, the type of information the defendant must possess in order to make a knowing and intelligent waiver of the right to a jury trial relates not to matters of strategy, but rather to his knowledge of his constitutional rights. *See United States v. Kelley*, 712 F.2d 884, 888 (1st Cir.1983).

. . . .

We hold a criminal defendant's waiver of his right to trial by jury is knowing and intelligent when he demonstrates his understanding that he will proceed to trial before a judge upon that waiver. Information about the composition of the jury pool and any outstanding discovery, although of some strategic value, does not provide the defendant with any greater understanding of the constitutional right at stake.

At the hearing held on remand, Jan Rowe testified that he represented Defendant throughout the course of the proceedings. Rowe was questioned regarding Defendant's waiver of his right to trial by jury as follows:

Q.   When they did find him, did you and he speak about the right to go in front of a judge or a jury?

A.   We did.

Q.   And did you advise him that it would be a 12-man jury?

A.   I'm sure I did.

Q.   And you advised him that 10 of the 12 had to agree?

A.   Correct.

Q.   He wanted a judge trial?

A.   I believe, when I mentioned the choice that he had, I believe he told me he wanted to think about it. This is my recollection. And I think maybe – it's a little speculation, because my memory is vague; but I believe he called my office and told me that he wanted a judge trial. And at some point after that, I went to the jail and I talked to him about it, and he decided that's what he wanted to do.

Rowe agreed that Defendant did not voice an objection to the bench trial while it was taking place. When asked if Defendant wavered in his request to be tried by a judge, Rowe responded: "Not to my recollection."

3

Rowe was asked on cross-examination whether he had an independent recollection of advising Defendant that ten of twelve jurors must concur to render a verdict. Rowe responded: "I assume that I discussed that with him because I know how it works; so, if I'm explaining the option to anyone, I assume that I explain that to them. But can I vividly remember doing that? No." There was no entry in the database of the public defenders' office indicating that Rowe either discussed the jury trial waiver or the fact that it was irrevocable with Defendant. Rowe had no recollection of whether he advised Defendant that a waiver was irrevocable or whether a judge reviewed the waiver with Defendant.

Rowe testified that, to his recollection, he informed Defendant of his choices, and Defendant wanted to think about it. A few days later, Defendant called Rowe and said that he wanted to be tried by a judge. Rowe acknowledged that there was no language in the motion to waive jury trial that indicated that Rowe had discussed the jury makeup with Defendant or that a waiver was irrevocable.

Rowe was questioned by the judge and stated that he told Defendant what his options were and discussed the number of jurors with him. Rowe testified that he had no reason to think that Defendant's decision was not intelligently made. On re-cross, Rowe admitted that he assumed he discussed the jury makeup with Defendant because he had done so in more recent cases.

Defendant testified that he and Rowe discussed whether he should elect a trial by jury or a bench trial. Defendant additionally testified that Rowe said that he would be tried by a jury of twelve of whom ten must concur to render a verdict. Defendant testified that he told Rowe that he was leaning toward a bench trial, and Rowe advised him to go ahead and sign the waiver. Defendant further testified that Rowe told him that he had until forty-five days before trial to withdraw the

waiver. Defendant subsequently signed the waiver, thinking that he could withdraw it at any time up to forty-five days prior to trial. Defendant testified that about a week later, he was reading law books and discovered a case wherein a defendant was found guilty of armed robbery during a bench trial. He then called Rowe and said that he was not comfortable with a bench trial, and that he wanted to withdraw the waiver. Defendant testified that he had no idea that the judge had to approve the withdrawal of his waiver. Defendant also testified that the next time that he spoke to Rowe was after the forty-five days had lapsed, and, at that time, Rowe informed him that the judge had denied the request to withdraw the waiver. Defendant further testified that the judge never went over the waiver with him and that no judge informed him that the waiver was irrevocable.

When asked why he did not tell the judge that he wanted a jury trial, Defendant stated: "Because Mr. Rowe begged and – pretty much begged me not to say anything unless I was asked to speak by the judge." Defendant was asked why he did not complain about the lack of a jury trial at the sentencing hearing, and he testified: "Well, when Mr. Rowe informed me that the waiver was denied by the judge of having the trial, I figured that was set in stone. I mean, I don't know how that works. I thought that was a done deal and over with."

The trial court found that the waiver of the right to trial by jury was made knowingly and intelligently and stated the following:

> [F]irst because Mr. Rowe, who is an experienced trial defense lawyer, has testified that he discussed fully and apprized Mr. Thompson of all of his options -- discussed fully the situation with Mr. Thompson and apprized him of all of his options and said that it was up to him.

> . . . In accordance with the defendant's decision, he filed the motion in May, just before -- apparently just before the deadline, five days, at most, before the deadline; and the trial was held as a bench trial in accordance with the defendant's wishes.

That timing makes me not find -- makes me find that the defendant's testimony today is not credible, because he indicated that he did not want to sign the waiver but that he signed it, and it was submitted and filed by Mr. Rowe long before the deadline and long before he had the right to change his mind.

I think that he may -- to give him the benefit of the doubt, he may have been mistaken, because I recall that he clearly said -- in fact, he said it more than once -- Mr. Rowe kept saying, you have until 45 days before to make this decision. Well, I think what Mr. Rowe was doing at that point is telling him the 45 days was upon them and that he needed to make that decision, and he did, and he made it at the last minute.

Secondly -- or, thirdly, I find nothing in the law that would indicate specifically that the Court must conduct a hearing to determine whether the waiver is knowing and intelligent, certainly not at the time it's filed 45 days before trial.

. . . .

It's very difficult to go back and prove that something was done knowingly and intelligently. I can do it at the time. In this particular case, all I have is Mr. Rowe's testimony, Mr. Thompson's testimony, and the record. I choose to believe Mr. Rowe and the record.

In brief to this court, Defendant paraphrases pertinent testimony as follows:

(1) Mr. Rowe: I didn't tell Mr. Thompson, or don't recall telling Mr. Thompson, that his waiver of a jury trial was irrevocable.

(2) Mr. Thompson: Mr. Rowe told me I should sign the waiver because I could always change my mind up to 45 days before trial. So I signed it [on May 19, 2011 - more than 45 days before trial. O.R. 130]. Then I told him – "about a week after he came and I signed the waiver" [i.e., after May 24, 2011, the date of the Motion and Order, but before the 45-day mark of May 30, 2011] – that I wanted to change my mind. Mr. Rowe came to see me the following week and now said it was up to the judge. Later he told me the judge denied the withdrawal of the waiver.

Defendant questions what basis the trial court had for determining that he was telling the truth about the jury composition and voting requirements but not about whether he was told about the judge having to approve a withdrawal of the waiver.

Defendant contends that assumptions are insufficient to carry a burden of proof. In support of this claim, Defendant cites *Caridas v. Dahl*, 311 So.2d 551

(La.App. 4 Cir. 1975), a suit on a promissory note. Therein, the assumption of a plaintiff who claimed that he made a payment, but had no records to support his claim, was ruled insufficient to meet his burden of proof. Defendant notes that the State has the burden of proof and that Rowe's assumption with no independent recollection would be insufficient to prove that he explained that ten of twelve jurors must concur to render a verdict without Defendant's corroborating testimony. Further, Rowe's lack of recollection about whether he told Defendant that he could withdraw his waiver was insufficient to prove that he explained this to Defendant when Defendant distinctly recalls that Rowe did not do so.

Defendant cites *State v. James*, 99-1047 (La.App. 5 Cir. 1/25/00), 751 So.2d 419, in support of his argument. Therein, the fifth circuit stated the following:

> [A] waiver of a jury trial is never presumed. The evidence adduced at the evidentiary hearing shows no affirmative waiver of this right by the defendant. His former defense counsel *presumed* that James must have waived his right to trial, since a bench trial took place, and said that the record "speaks for itself." But it is this presumption that the law does not allow. The evidence, at best, shows that Amstutz probably advised the defendant of his right to trial by jury. The evidence does not show that *James* waived this right, either knowingly, intentionally, or otherwise. Therefore, James's conviction must be reversed, and the matter remanded for a new trial.

*Id.* at 422-23.

Defendant asserts that the issue in the case at bar is not whether he signed a waiver but whether Rowe adequately explained to him what he needed to know in order to make a knowing and intelligent decision to sign the waiver.

Defendant testified that he and Rowe did discuss whether Defendant should elect a trial by jury or a bench trial. Additionally, Rowe said that he thought Defendant would be tried by a jury of twelve of whom ten must concur to render a verdict. Defendant testified that he told Rowe that he was leaning toward a bench

trial and signed the waiver. Approximately a week later, Defendant changed his mind and wanted to withdraw his waiver.

Defendant's testimony is sufficient to find that he was informed of and understood the choice to be judged by a group of people from the community or to have his guilt or innocence determined by a judge. Based on the supreme court's ruling in *Bazile*, we find that Defendant knowingly and intelligently waived his right to trial by jury. Accordingly, this assignment of error lacks merit, and we affirm both the trial court's ruling and Defendant's conviction.

## DECREE

The ruling of the trial court finding that Defendant knowingly and intelligently waived his right to trial by jury is affirmed, and Defendant's conviction is affirmed for that reason.

**AFFIRMED.**